SONNY J. OLSEN (USB #11308)
A. REID MANN (USB #14709)
**AXIOM LEGAL**
730 South Sleepy Ridge Drive, Suite 300
Orem, Utah 84058
Telephone (801) 960-3696
Business Fax: (801) 960-3697
sonny@axiom-legal.com
*Attorneys for Plaintiff*

### IN THE UNITED STATES FEDERAL DISTRICT COURT, CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| VISION SECURITY, LLC, a Limited Liability Company, ROB HARRIS, and individual<br><br>Plaintiffs,<br><br>vs.<br><br>XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company;<br>Defendant. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:13-CV-00926-EJF<br><br>Judge: Evelyn J. Furse |

Plaintiffs Vision Security, LLC ("Vision") and Rob Harris ("Harris"), by and through counsel of record Sonny Olsen of the law firm Axiom Legal, submit this Memorandum in Opposition to Defendant's Motion to Dismiss as follows:

### **INTRODUCTION**

Plaintiffs brought suit against the Defendant for publishing false, misleading, and defamatory statements in violation of the Lanham Act and Utah's Deceptive Trade Practices Act,

and for claims of defamation and libel in relation to statements Defendant allowed to be published on its website.

Defendant Xcentric is an Arizona based limited liability corporation that operates a website known as the "RipoffReport". Xcentric claims that it does not own any assets, have any offices or any officers in Utah, and does not conduct any business in Utah and thus has not established sufficient minimum contacts as to be under the personal jurisdiction of the forum State of Utah.

According to Defendant's motion, it seems that Defendant believes its website constitutes a "passive" website rather than an "active" or "interactive" website. Whether a website is passive, active, or interactive is a key in determining whether a court may assert jurisdiction over an out-of-state defendant whose only contacts with a forum state are through its website. However, Plaintiffs also claim Defendant actually travels in the State for the purpose of recruiting potential companies to sign up for its Corporate Advantage Program and to advertise on its site.

In the ever evolving realm of the law and the Internet the recent case of *Zippo Mfg. Co. v Zippo DOT Com, Inc*., has brought forth a legal test and analysis that is helpful in determining when a Court may exercise personal jurisdiction over an out-of-state party based on its operation and maintenance of a website. This test has been coined the "Zippo sliding scale test". This test provides a frame work whereby a Court may determine whether a website is "passive", "active", or "interactive". Passive websites are not sufficient to create sufficient minimal contacts by the website operator as to justify the exercise of personal jurisdiction over the website provider.

However, active and interactive websites do create minimal contacts and thus personal jurisdiction may be proper.

An integral part of the Ripoff Report website is a program marketed as the Corporate Advantage Program ("CAP"). While, a portion of the Ripoff Report website is dedicated as a "forum" style website where third parties may post content and interact, the CAP is a significant component of the overall Ripoff Report website. As set forth herein, because of the CAP component of the Ripoff Report website, this site is not merely a "passive" site used only for the exchange and trade of information by third party content providers. Rather, through the CAP component of the Ripoff Report website, Xcentric is operating and maintaining a website that is clearly an "active" website or at the minimum an "interactive" website. Finally, the Court need only look to the Ripoff Report website to see the number of advertisers on the site which again brings up the issue of the site being "active".

## **ARGUMENT**

**I. THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT.**

Utah's State long arm statue extends to the full extent of the Constitution and should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by due process. *See* Utah Code Ann. 78B-3-201; *Starways, Inc. v. Curry,* 980 P.2d 204, 206 (Utah1999). To determine whether the Court has personal jurisdiction permitted by due process, the following factors must be analyzed: (1) whether a non-resident defendant purposefully established sufficient minimum contacts with the forum state, (2) whether the claims arise out of those contacts, and (3) whether jurisdiction is constitutionally reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (U.S. 1985).

Moreover, when a Defendant files a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Plaintiff must make only a prima facie case of personal jurisdiction in order to defeat the motion. *See PowerHour, L.L.C. v. Brain Swell Media, L.L.C.,* 2011 U.S. Dist. LEXIS 114692 (D. Utah Oct. 4, 2011). In such cases the Plaintiff's burden is light. *See Electronic Realty Assocs., L.P. v. Vaughan Real Estate,* 897 F. Supp. 521 (D. Kansas 1995). Moreover, factual disputes are resolved in favor of the Plaintiff when determining the sufficiency of the Plaintiff's showing. *See Purco Fleet Servs., Inc. v. Towers*, 38 F. Supp. 2d. 1320, 1322 (D. Utah 1999); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995).

## II. DEFENDANT HAS ESTABLISHED MINIMUM CONTACTS IN THE FORUM STATE OF UTAH.

Xcentric argues it has not established minimum contacts in the state of Utah because it does not own any assets, have any offices or agents in Utah, and its website does not "target citizens of the State." Minimum contacts are established when a Defendant purposefully directs their activities at residents of the alleged forum state and the litigation results from alleged injuries that arise out of, or relate to, those activities. *Burger King,* 471 U.S. at 472; *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086 (10th Cir. Kan. 1998)(The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant *"if the defendant has 'purposefully directed' his activities at residents of the forum…"*) emphasis added.

Here, Xcentric has purposefully directed its activities at Utah through its "Corporate Advocacy Program" ("CAP").[1] Because of the commercial nature of the CAP on the Ripoff

---

[1] The Corporate Advocacy Program is a program offered by Ripoff Report via the Ripoff Report website. According to the website the CAP "engages your business", "turns negatives into positives", "helps your employees", and

4

Report website, it is an active internet site rather than a passive site. Also, Defendant has purposefully traveled into Utah to meet with and solicit businesses for its CAP and to solicit for advertisers on its site. Thus, Defendant has purposefully directed its activities to the forum state of Utah, thereby establishing minimum contacts with Utah as more fully set forth below.

    *A. The Ripoff Report Website is an Active Website Rather than a Passive Website.*

The issue of whether minimum contacts have been established through use of internet websites was addressed in the landmark case *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997). In this case the Court established a test (the Zippo "Sliding Scale" test) for determining when a court has jurisdiction resulting from activities related to a website.[2] The Tenth Circuit used this test in *Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292 (10th Cir. 1999), and The United States District Court for the District of Utah adopted this test in *Patriot Sys. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1324 (D. Utah 1998).[3]

---

"grows your business". Defendant advertises these benefits and others all for a certain fee and membership agreement. A business may enroll in the CAP by using the Ripoff Report website. *See* http://www.ripoffreport.com/CorporateAdvocacyProgram/Start-Your-Application.aspx (last visited Novmber 18, 2013). Through the CAP Ripoff Report claims it will among other things, (1) contact the authors of forum posts to verify the fairness of the post, (2) determine the truthfulness of complaints as best they can, and (3) prevent the filing of "phoney reports" by exposing existing reports as false or malicious. Further, Ripoff Report claims that through the CAP, businesses will benefit because it will allow them to gain satisfied customers, positive PR, and permanent advertisement for future customers.

[2] At least five federal appellate courts have expressly adopted the Zippo test including the Third, Fourth, Fifth, Ninth and Tenth Circuits.

[3] *Patriot Sys. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1324 (D. Utah 1998) "The application of personal jurisdiction standards to Internet usage presents interesting and novel issues…. the United States District Court for the District of Kansas recently addressed these issues. The court acknowledged that '"the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages."' *Id*. at 1034 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). However, current case law reveals three general categories along a "sliding scale" for evaluating jurisdiction. Id. First, personal jurisdiction is established when '"a defendant clearly does business over the Internet"', such as entering into contracts which require the '"knowing and repeated transmission of computer files over the Internet."' *Id*. (*internal citation omitted*). Second, exercising personal jurisdiction is not appropriate when the Internet use involves '"[a] passive Web site that does little more than make information available to those who are interested in it."' *Id*. (*internal citation omitted*)… <u>The court finds this analysis helpful in this relatively new and changing area of law</u>."

The sliding scale approach advocates that personal jurisdiction is established when "'a defendant clearly does business over the Internet'", such as entering into contracts that require the "'knowing and repeated transmission of computer files over the Internet.'" *Id.* at 1323; (quoting *Zippo*, 952 F. Supp. at 1123-24). If the defendant engages in such activity then the Internet activity is "active" under the due process analysis and satisfies minimum contacts. *Fenn v. MLeads Enters.*, 2006 UT 8 (Utah 2006); *see also Sys. Designs, Inc. v. New CustomWare Co.*, 248 F. Supp. 2d 1093, 1100 (D. Utah 2003) (Personal jurisdiction can easily be found were a defendant clearly does business over the Internet such as entering into contracts which require the knowing and repeated transfer of files over the Internet). At the other end of the sliding scale are "passive" websites that do nothing more than make information available, and cannot by itself form the basis of personal jurisdiction. *Sys. Designs, Inc.,* 248 F. Supp. 2d at 1100.

Here, Xcentric claims that it is not an "ecommerce" site. *See* Aff. of Edward Magedson on file with the Court. Through this statement, Xcentric seems to assert or rely on the assumption that the Ripoff Report site is exclusively a passive website because it is a forum-styled website where consumers as third party content providers merely make information available. However, Defendant misses the mark. The Ripoff Report website is not exclusively a forum for making information available because it clearly has an active commercial component through the CAP and the sites advertisers.

In *Nutraceutical Corp. v. Vitacost.com, Inc*., 2006 U.S. Dist. LEXIS 33762 (D. Utah May 25, 2006), a defendant's website fell within the sliding scale category of doing business over the internet because it among other things allowed potential customers to view product descriptions, purchase products, and provide payment information. The Court in the *Nutraceutical Corp*

6

opinion concluded that the defendant's website was set up and operated at high level of interactivity:

> "[W]hich encourages customers accessing its website to order its products from which [the defendant] receives economic benefits from the product sales. As such, such [the defendant's] website falls within the sliding scale category of website that allows a defendant to "do business" and "enter into contracts with residents of foreign jurisdictions over the Internet." *Id.* Additionally, because the Defendant's website constitutes a commercial web site, the Defendant has purposefully availed itself of the privilege of doing business in the jurisdiction. *Id.*

Similarly, here Xcentric's CAP webpage located within and as part of the Ripoff Report website advertises a product – the CAP – and advertises that "We can help you regain control over your operational, organizational and other issues that generate the majority of complaints." *See http://www.ripoffreport.com/CorporateAdvocacyProgram/Why-Corporate-Advocacy.aspx* (last visited November 18, 2013). The webpage for the CAP also gives details and descriptions about how the CAP works and explains the benefits of joining the CAP. Chief among these benefits are the claims that Defendant will: (1) contact the authors of forum posts to verify the fairness of the post, (2) determine the truthfulness of complaints as best they can, (3) prevent the filing of "phoney reports" by exposing existing reports as false or malicious. Further, Ripoff Report claims that through the CAP businesses will benefit because it will allow them to gain satisfied customers, positive PR, and permanent advertisement for future customers. All of these benefits can only be gained by enrolling in the CAP which is a fee based membership. *See also Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292 (10th Cir. 1999) (Solicitation is some evidence suggesting purposeful availment). To enroll in the CAP, a customer must contact the CAP through a hyperlink on the Ripoff Report and provide details and information about them or

the business entity they represent. In return, Ripoff Report will reply to the customer inquiry with further instructions on the fees to be charged, and the next steps for completing enrollment in the CAP.

Here, just like in *Nutraceutical Corp.,* Xcentric's website operates at a high level of interactivity, it give explanations and descriptions about its CAP, and it advertises a variety of benefits from joining the CAP. Ultimately Xcentirc encourages customers to enroll in its CAP and any interested customer must contact Xcentric through the website and wait for a response in order to enroll. Clearly, Xcentric receives economic benefits from customers' enrollment in its CAP because it is fee based.

Moreover, the Ripoff Report website is not a passive site because it has an editorial component created and supported by Xcentric. By a page titled "Consumer Resources"[4] the website offers a vast amount of information to consumers including by not limited to protecting your identity, telemarketing fraud, work at home scams, Medicare coverage scams and government grants. All the information contained on these various pages are created and published by Xcentric for the alleged purpose of protecting consumers.

In consideration of these facts, the Ripoff Report website falls within the sliding scale category of website that allows a defendant to "do business" and "enter into contracts with residents of foreign jurisdictions over the Internet." *Nutraceutical Corp.,* 2006 U.S. Dist. LEXIS 33762 at ¶15. Therefore, Xcentric's website is an active website. *See Purco Fleet Servs. v. Towers,* 38 F. Supp. 2d 1320, 1323-1324 (D. Utah 1999)( holding [T]his court has declined to exercise jurisdiction where the web site at issue did not allow for communication between

---

[4] *See http://www.ripoffreport.com/ConsumerResources.aspx* (last visited Dec. 2, 2013).

Internet users and the company that had posted the site and was "a passive advertisement which merely provided information to those interested in it."(*Internal citations omitted)*. However, where a defendant's web page "enable(s) web users to contact the defendant via electronic mail, thus permitting conversations between the defendant and potential customers," jurisdiction has been found to exist).

Here, Xcentric has purposefully directed its activities at the residents of Utah because it is clearly doing business over the internet and engaging in such activity renders Defendant's website active and thus satisfies minimum contacts by Xcentric in the State of Utah. *See Sys. Designs, Inc.,* 248 F. Supp. 2d at 1100.

### III. PLAINTIFFS' CLAIM ARISES OUT OF DEFENDANT'S CONTACTS WITH UTAH.

Once a Plaintiff has shown that a Defendant has sufficient minimal contacts in the forum state it must be determined whether the Plaintiff's injuries arise out of, or relate to, those contacts. *See Asahi Metal Indus. Co., Ltd. V. Superior Court of Calif.,* 480 U.S. 102, 109, (U.S. 1987).

Here, Xcentric argues there is no sufficient nexus between Xcentric's forum-related conduct and Plaintiffs' alleged injuries. Again, Defendant relies on the assertion that its website is a "passive" site and it is not responsible for any content contained therein and thus the activity of the Ripoff Report website is not sufficient to create a nexus to any injury that may arise from content on the website. As explained above Xcentric's website, Ripoff Report is clearly an active commercial site because it solicits business, communicates with users, accepts electronic

9

files, and derives revenue from commercial advertisers. Thus Xcentric's reliance on the claim that there is no sufficient nexus between its conduct and Plaintiffs' injuries is misplaced.

Here, Xcentric has engaged in conduct through the CAP component of Ripoff Report which makes it an active website and, therefore, has established minimal contacts with the State of Utah. Plaintiffs' claims of defamation and false and deceptive representations against Xcentric specifically arise out of the very conduct of Xcentric operating its commercially active website. By operating its website, Xcentric has knowingly allowed false and defamatory content regarding Plaintiffs to be published. The original author of the statements against the Plaintiffs <u>recused them</u> by Affidavit and <u>requested</u> that Xcentric take them down. However, when this fact was brought to Xcentric's attention, it refused to remove the false content from its website. Rather than remove the patently false content, Xcentric solicited Vision to pay a fee and join its CAP as an offer to assist Plaintiff in rebutting the negative and false content posted on the site which content was proved false through sworn Affidavit.

Here, the Plaintiffs' claims as alleged in its Complaint are directly related to, and arise out of Xcentirc operating and maintaining the Ripoff Report website. This is so, because through its site Xcentric has allowed false, misleading, and defamatory content to be published about Plaintiffs, thus resulting in Plaintiffs' causes of action. Further, Defendant subsequently solicited Vision to join its CAP as a supposed means to help Plaintiff combat the defamatory statements of which Defendant had become publisher. Clearly Plaintiffs' claims relate to, and arise out of Xcentric's conduct of both operating and maintaining an active website and subsequently soliciting Vision to join its CAP. Therefore, there is personal jurisdiction in this matter.

Here, Xcentric is essentially doing nothing more than operating a website where anyone can publish statements about a company regardless of their truth and veracity. Then Xcentric offers a fee based membership program for companies that have been tarnished to attempt to rebut and counter the attacks on their reputations which Defendant has allowed to be published on its website. Such actions amount to nothing more than an act of extortion.

## IV. PERSONAL JURISDICTION IN THIS CASE DOES NOT OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

Finally, the court must consider whether the exercise of personal jurisdiction offends traditional notions of "fair play and substantial justice." *Burger King,* 471 U.S. at 476. Such a determination requires the court to consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in further fundamental substantive social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291(1980).

Here, personal jurisdiction is reasonable in light of the circumstances because the balance of the factors weigh in favor of the Plaintiff. First, the burden on Xcentric is minimal. As a corporation located in Arizona the geographical location to the forum is not a great distance. Moreover, the use of digital communication and other technological resources place little burden on Xcentric to litigate in Utah. *Burger King*, 471 U.S. at 474 (modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity). Thus, forcing Xcentric to litigate this dispute in Utah is

not gravely difficult and inconvenient. Second, the forum state of Utah clearly has a significant interest in adjudicating the wrongs which its citizens suffer and thus resolving the dispute. *Burger King,* 471 U.S. at 483 (States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors). Third, Plaintiffs, as residents in the forum State of Utah, have a strong interest in receiving effective and convenient relief. Indeed, relief in one's own home state surely provides effective and convenient relief. Finally, Xcentric's arguments that these factors weigh in its favor as to deny personal jurisdiction is without any legal support. Most notably, Xcentric provides no legal support for its conclusion that allowing personal jurisdiction in this case would be against public policy and have chilling effects on free speech. Further, invoking an argument relating to the chilling of free speech, one of the most protected constitutional rights, is no small matter. Here, Xcentric does so, and offers no case law or legal authority to support its assertion.

## V. THE TENTH CIRCUIT'S DECISION IN SHRADER V. BIDDINGER DOES NOT APPLY HERE.

Plaintiff argues that Tenth Circuit law as set forth in *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011) is analogous to the facts at hand. In *Shrader*, the Court found that no specific jurisdiction existed against an out-of-state website where allegedly defamatory information was posted about an in-state plaintiff. The *Shrader* opinion is easily distinguishable from the facts here.

In the *Shrader* opinion, the court found that the website at issue was a passive website rather than an active or interactive website because it was simply a "vehicle by which members could exchange information" and there was no indication that the [website based] forum altered

12

the basic passive character of the third-party content. *Id.,* at 1241. Additionally, the Court stated that posting allegedly defamatory comments or information on an [passive] internet site does not, without more, [5] subject the poster to personal jurisdiction wherever the posting could be read. *Id.* at 1241.

Here, unlike the website in *Shrader*, Xcentric's website is not merely a vehicle for members to exchange information. To the contrary, through Defendant's Ripoff Report website and its CAP component of the site Defendant actively solicits businesses to engage with it and its website, and for a fee be assisted by the CAP in rebutting negative, false, or phoney statements regarding an affected business on Ripoff Report. As previously set forth, Xcentric claims the CAP can proactively prevent negative postings about a business on Ripoff Report and even grow a business. Also, the Ripoff Report site proactively publishes information through its editorial page tiled "Consumer Resources". *See supra.* Clearly, Defendant's website is nothing similar to a website that is just a vehicle to exchange information[6]. Because t Xcentric's website is an active website, rather than passive one, *Shrader* and the analysis applied in *Shrader* is in no way analogous to the present facts. *See supra Nutraceutical Corp; Purco Fleet Servs*. Therefore, the rule as stated in *Shrader*, precluding personal jurisdiction over an out-of-state defendant operating a passive website, is not applicable to these facts.

---

[5] *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218 (9th Cir. Cal. 2011) The court has struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed…In determining whether a nonresident defendant has done "something more," the court has considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident.

[6] *See supra* Note 1.

## CONCLUSION

Thus, for all the foregoing reasons set forth in this Memorandum Defendant's Motion to Dismiss for Lack of Personal Jurisdiction should be denied and the Court should grant Plaintiffs, Vision Security and Rob Harris their attorney's fees and costs in defending against this Motion.

SIGNED AND DATED this 2nd day of December, 2013.

**AXIOM LEGAL**

/s/ Reid Mann
REID MANN
Attorney for Plaintiffs

# CERTIFICATE OF MAILING

On this 2<u>nd</u> day of December, 2013, I hereby caused the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,** to be sent via mail, postage prepaid, to the following:

Jason P. Webb
**JP Webb**
1204 W. South Jordan PKWY, Suite B2
South Jordan, UT 84095

                                                         /s/ Laurin Thompson
                                                         Legal Assistant to Sonny Olsen