Jason Webb (USB#10128)
Philip Matthews (USB #13294)
Webb IP Law Group
1204 W. South Jordan Parkway Suite B2
South Jordan, UT 84095

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| VISION SECURITY, LLC, a Limited Liability Company, ROB HARRIS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company;<br><br>Defendant. | Case No.: 2:13-CV-00926-EJF<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

      Defendant Xcentric Ventures, LLC ("Xcentric") hereby submits its Reply in Support of its 12(b)(6) Motion to Dismiss for Failure to State a Claim. Nothing in Plaintiffs' Opposition demonstrates that Xcentric can be held liable for third-party posted content, and its claims continue to be in direct conflict with the Communications Decency Act, 42 U.S.C. § 230. This Reply is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. IMMEDIATE DISMISSAL IS APPROPRIATE

Plaintiff pleads that it is entitled to survive a motion to dismiss because "a number of cases addressing the issue of the application of Section 230 immunity have done so at the summary judgment stage." (Pl's Opp to MTD p. 2 (citing *FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009); C*arafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055 (C.D. Cal. 2002)). The fact that other Courts may have dismissed on summary judgment, bears no relevance to whether this case should be dismissed at the pleading stage. The difference, of course, is whether the allegations in the complaint actually state a claim. Moreover, Courts have strongly condemned efforts to keep cases alive through legal gymnastics:

> We must keep firmly in mind that this is an immunity statute we are expounding, a provision enacted to protect websites against the evil of liability for failure to remove offensive content. <u>Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality</u>. Such <u>close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites</u>, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties. Where it is very clear that the website directly participates in developing the alleged illegality . . . immunity will be lost. But in cases of enhancement by implication or development by inference . . . section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.

*Roommates.com*, 521 F.3d at 1174–75 (emphasis added).

### II. CDA IMMUNITY APPLIES TO XCENTRIC

The facts, as alleged in both the Complaint and in Plaintiff's Memorandum in Opposition to the Motion to Dismiss for Failure to State a Claim, clearly indicate that Non-Party Anthony Rees was the individual responsible for creating the content posted on Ripoff Report. (*See, e.g.*, Complaint ¶ 27; Pl's Opp. to MTD p. 5). And the facts

alleged in both filings clearly indicate that Xcentric merely provided a forum on which Non-Party Rees posted. (*See, e.g.*, Complaint ¶ 35; Pl's Opp. to MTD p. 4).

The sum of the Plaintiffs' Memorandum in Opposition to the Motion to Dismiss is an attempt to survive the motion by making conclusory allegations in line with the relevant statutes and case law. But conclusory allegations, without more, do not adequately plead facts sufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) ("We agree with the district court that this inference is not plausible because of the conclusory nature of the allegations of the complaint and the failure to allege any violations."); *Nester v. Bank One Corp.*, 224 F. Supp. 2d 1344, 1348 (D. Utah 2002) (granting motion to dismiss where the plaintiff's claims were based only on conclusory allegations).

Pursuant to 47 U.S.C. § 230(c)(1), "[a] defendant is … immune from state law liability if (1) it is 'a provider or user of an interactive computer service'; (2) the complaint seeks to hold the defendant liable as "a publisher or speaker"; and (3) the action is based on information provided by another information content provider …'." *Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y.3d 281, 286, 952 N.E.2d 1011, 1015 (2011); *see also Doe v. Myspace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008) (observing that "[p]arties complaining that they were harmed by a Web site's publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online.").

As demonstrated in Xcentric's Motion to Dismiss and again herein, the undisputed facts show the following: (1) Xcentric provides an interactive computer service; (2) the Plaintiffs' claims seek to treat Xcentric as a "speaker or publisher"; and (3) the Plaintiffs'

claims are based on information created by a third party. Thus, the Plaintiffs' claims are plainly barred by the CDA to the extent they arise from material posted on Ripoff Report by a third party.

### A. The Facts Pled by Plaintiffs Demonstrate that Xcentric is an Interactive Computer Service.

In reviewing the elements of an interactive computer service, the Tenth Circuit has observed that "[t]he prototypical service qualifying for this statutory immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009) (citing *Zeran v. Am. Online, Inc*., 129 F.3d 327, 328–29, 332 (4th Cir.1997). Plaintiffs claim that additional factual development is necessary to determine if Xcentric functions as an interactive computer service. (Pl's Opp to MTD p. 3). But the facts as pled *by Plaintiffs* sufficiently demonstrate that Xcentric is an interactive computer service: "XV operates Ripoff Report and openly provides a forum for anyone to write anything about anyone – regardless of the truth or veracity of the statement." (Complaint ¶ 35). Other than conclusory statements that Xcentric somehow participated in developing the content, Plaintiffs pled no facts that support anything other than Xcentric as an interactive computer service. Therefore, Xcentric is clearly an interactive computer service eligible for immunity under the CDA.

### B. Plaintiffs Are Attempting to Hold Xcentric Liable as the "Speaker or Publisher" and the Offending Content Was Posted by a Third-Party Content Provider.

Plaintiffs unleash a slew of conclusory statements in their Response in attempt to create factual issues sufficient to survive the motion to dismiss and to impute liability to Xcentric as a speaker or publisher. The Memorandum in Opposition states, *inter alia*: "[T]his case raises factual issues as to whether Defendant was responsible for the content of the postings, changed the postings, altered the postings, profited from the postings, or engaged in any other development of the Rees Postings disqualifying Defendant from

enjoying Section 230 immunity" (Pl's Opp. MTD p. 3); and "Here, it is disputed whether Defendant encourages illegal content, and whether its design and business model encourages illegal content" (*Id.* at 5).

Yet despite these conclusory statements, Plaintiffs utterly fail to "raise factual issues" that support them. There is no indication of what Xcentric did in this regard and how. Rather, Plaintiffs have continued to plead facts that demonstrate Xcentric simply provided a forum and Non-Party Rees posted on that forum. Behind the curtain of Plaintiffs' conclusory statements, the Plaintiffs' only argument is that Xcentric should be treated as the speaker or publisher because it did not remove the posts: "Defendant cannot escape liability because it has chosen to keep the posts on its website when it was requested by the posting party (Rees) to remove them because the posts are false and defamatory" (*Id.* at 4); and "In allowing these statements to continue to be posted when the initial publisher requested they be removed moves Defendant from being an intermediary to a publisher and, therefore, not entitled to immunity under the CDA" (*Id.* at 6). But, as has been demonstrated previously, the CDA plainly refutes such an argument. *See, e.g.*, *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000). Xcentric cannot be treated as the speaker or publisher of content provided by a third party.

Plaintiffs point to the Tenth Circuit's decision in *FTC v. Accusearch Inc.* as support that a website can be held liable for "developing" content. In *Accusearch*, the court found the website operator liable because it knowingly contracted with researchers to illegally obtain private information and then posted the illegal information on the site itself (Accusearch apparently claimed it was immune because the information was provided by a third party). 570 F.3d 1187, 1199 (10th Cir. 2009). The Tenth Circuit differentiated its decision in *Accusearch* from its previous decision in *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980 (10th Cir. 2000), where the court had found AOL immune from liability for posting erroneous stock quotations on its site even though AOL had solicited and contracted with another party to provide them. *F.T.C.*

*v. Accusearch Inc.*, 570 F.3d 1187, 1199-200. The *Accusearch* Court explained that, in that instance (*Ben Ezra*), the offending content was not specifically solicited by AOL; the information sought and thereafter posted by AOL was not inherently unlawful. *Id*. Accusearch, however, knew that the information it solicited was being obtained unlawfully and, thus, the website operator was deemed an internet content provider when it posted the information on its website. *Id*. Thus, the court held that "Accusearch's actions were not 'neutral' with respect to generating the offending content." *Id*.

Here, there is no allegation that Xcentric posted anything at all. Plaintiffs claim that Xcentric was also "'not neutral', by seeking to profit by keeping the posts on the website and creating a system whereby individuals are encouraged to post disparaging and defamatory statements, elicits the allegedly illegal content, and makes aggressive use of it in conducting its business." (Pl's Opp to MTD p. 4). But the issue of neutrality in *Accusearch* concerned only "<u>generating</u> the offending content." And Plaintiffs actually pled that Xcentric was neutral as far as generating offending content: "XV operates Ripoff Report and openly provides a forum for anyone to write anything about anyone – regardless of the truth or veracity of the statement" (Complaint ¶ 35). Plaintiffs make a strong case to that effect in its Memorandum in Opposition as well: "Defendant provides the very framework that could be utilized <u>for proper or improper purposes</u> . . . ." (Pl's Opp. MTD p. 4) (emphasis added). Thus, the facts as pled by Plaintiff actually indicate Xcentric remained neutral regarding generation of content.

Plaintiffs' conclusory claims that Xcentric was not neutral must be with respect to third-party posts <u>after</u> they are generated. But neutrality toward third-party posts after they are posted is not required. Again, the CDA protects an interactive computer service when it makes traditional editorial decisions such as whether to publish, withdraw, postpone, or alter content. *See Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Thus, a website remains immune under the CDA even if it refuses to take down allegedly defamatory material. *See Zeran*, 129 F.3d at 330.

Plaintiffs claim that Xcentric's CDA defense is based on the "inconsistent, outdated and vague rulings pertaining to the CDA." (Pl's Opp. to MTD p. 2). Yet one of the recent cases Plaintiffs rely on in their Opposition refers to "the national consensus" in applying the CDA to generally immunize internet forums from liability for content posted by third parties. *Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y.3d 281, 288-89, 952 N.E.2d 1011, 1017 (2011).

Moreover, that case weighs heavily against Plaintiffs' attempts to impute liability based on "encouraging" defamatory content. In *Shiamili*, the plaintiff alleged, *inter alia*, that the defendant's website was intended to encourage the posting of negative information and that the website operator itself had actually posted its own comments in attempt to coax additional defamatory content from the original poster. *Id.* at 285–86, 952 N.E.2d 1011, 1014–15. Although there are no allegations that Xcentric actually posted anything here, the argument that Xcentric somehow played a role in encouraging or developing the content is essentially identical to the argument made in *Shiamili*.

The New York Court of Appeals flatly rejected Shiamili's arguments, finding that none of the website host's actions "materially contributed" to the illegality of the third party's statements, and therefore the host retained its CDA immunity:

> As an initial matter, the complaint alleges that the defamatory statements were first posted by anonymous users; there is no allegation that defendants actually authored the statements. A website is generally not a 'content provider' with respect to comments posted by third-party users. We reject Shiamili's contention that defendants should be deemed content providers because they created and ran a website which implicitly encouraged users to post negative comments about the New York City real estate industry. **Creating an open forum for third-parties to post content—*including negative commentary*—is at the core of what section 230 protects**.

*Id.* at 290–91, 952 N.E.2d 1011, 1018 (emphasis added) (citing *DiMeo v. Max*, 248 Fed.Appx. 280, 282 (3d Cir. 2007); *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009)).

Indeed, Xcentric has repeatedly and successfully defended similar claims against it based on CDA immunity. *See Asia Econ. Inst. v. Xcentric Ventures, LLC*, CV 10-1360 SVW PJWX, 2010 WL 4977054 (C.D. Cal. 2010); *GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173 (N.D. Tex. 2009) (holding Xcentric entitled to immunity under the CDA); *Intellect Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273 (N.Y.Sup. 2009) (same); *Whitney Info. Network Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095 (M.D. Fla. 2008) (same); *Global Royalties, Ltd. v. Xcentric Ventures, LLC,* 544 F.Supp.2d 929 (D. Ariz. 2008) (same); *see also Herman v. Xcentric Ventures, LLC*, Case No. 1:10-cv-00398 (N.D. Ga. Feb. 12, 2011) (recognizing, "[s]ince the CDA was enacted in 1996, every state and federal court that has considered the merits of a claim against the Ripoff Report has, without exception, agreed that [Xcentric is] entitled to immunity under the CDA for statements posted by third-party users.").

According to the facts as pled by the Plaintiffs, Xcentric is nothing more than the provider of a forum where others can post comments. Plaintiffs do not claim Xcentric posted anything about them on that forum. Rather, Plaintiffs admit a third party posted comments about them. Plaintiffs attempt to impute authorship to Xcentric to the extent it abides by its non-removal policy. But Congress protected Xcentric from liability for such editorial decisions through the CDA. Therefore, Plaintiffs' complaint should be dismissed for failure to state a claim where it attempts to hold Xcentric liable for a third-party post.

### III.    THE LANHAM ACT CLAIM IS BARRED AND PLAINTIFF LACKS STANDING.

Plaintiff's Lanham Act claim is not an intellectual property claim and is barred by the CDA. The portion of the Lanham Act relied on by Plaintiffs addresses trade disparagement. Trade disparagement under the Lanham Act is essentially a federal claim for defamation. Plaintiffs' claim does not implicate intellectual property any more than a claim for slander implicates intellectual property. Thus, although <u>part</u> of the Lanham Act protects trademarks, which actually do concern rights to creations of the mind, the trade disparagement part of the statute does not concern intellectual property. Plaintiffs' claim

under the trade disparagement section of the Lanham Act seeks to treat Plaintiff as a publisher and is barred by the CDA.

Therefore, the Communications Decency Act's exclusion of intellectual property law, under 47 U.S.C. § 230(e)(2), does not apply to such claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 n.5 (9th Cir. 2007) (discussing concern that courts might treat certain claims that are not truly based on intellectual property as intellectual property to get around CDA immunity); *Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628, 632–33 (E.D. Va. 2010) *aff'd,* 676 F.3d 144 (4th Cir. 2012) (finding that CDA immunity still applied because the interactive computer service simply provided a portal for others who misappropriated trademarks); *Parker v. Google, Inc*., 422 F. Supp. 2d 492, 502–03 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (holding that a trademark claim could not be sustained against an interactive computer service because (1) there was no likelihood of confusion and (2) the plaintiff only alleged that the interactive computer service "republished" the allegedly infringing content and did not actually participate in the creation of the material); *Associated Bank-Corp. v. Earthlink, Inc.*, 05-C-0233-S, 2005 WL 2240952 (W.D. Wis. Sept. 13, 2005) (CDA bars a claim for trade disparagement under the Lanham Act).

Furthermore, courts have held that a competitor's online statements, even if made as statements of objective fact intending to interfere with a competitor's business, cannot be considered "commercial advertising" subject to Lanham Act protection if it does not influence consumers to purchase the poster's products. See *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1019 (D. Idaho 2010) (citing *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003)). Here, Xcentric is not a competitor, and Plaintiffs admit that a third party made the disparaging comments. Not only did Xcentric not make the statement, it certainly did not make the statements to compete and encourage others to purchase its products. Thus, Xcentric's actions (or, rather, inactions) cannot be deemed commercial advertising, and Plaintiffs cannot assail Xcentric based on the Lanham Act.

Beyond this, Plaintiffs lack standing to bring a Lanham Act claim against Xcentric. The U.S. Supreme Court recently clarified the standing test for Lanham Act

false advertising claims. According to the Court, standing to bring a Lanham Act claim is governed by the "zone of interests" test and the proximate-cause requirement. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 12-873, 2014 WL 1168967 *10 (U.S. Mar. 25, 2014). Plaintiffs, here, lack standing because they fail under the proximate-cause requirement. The *Lexmark* Court explained that "[t]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.*; *cf. CoStar Group, Inc. v. LoopNet, Inc*., 373 F.3d 544, 549 (4th Cir. 2004) (stating that although copyright infringement does not require intentional interference with a copyright, "it nonetheless requires conduct by a person who causes in some meaningful way an infringement").

Plaintiffs allege their injury was caused by Non-Party Rees: "The Complaint clearly sets forth that Mr. Rees made the postings in a competitive environment and that he intended for the postings to injure Vision and Harris" (Pl's Opp MTD p.8); "The Rees statements were made for competitive advantage and they are false which cannot be disputed." (Pl's Opp MTD p. 10). Therefore, Xcentric did <u>not</u> "ma[k]e the postings in a competitive environment," and Xcentric did <u>not</u> post anything for "competitive advantage." And, again, no reasonable person could confuse the origin or endorsement of goods based on any of Xcentric's actions/inactions. Therefore, the Lanham Act does not apply, the Plaintiffs lack standing, and this cause of action should be dismissed.

## IV.   CONCLUSION

For all the foregoing reasons, Defendant Xcentric Ventures, LLC respectfully requests that this Court, pursuant to Rule 12(b)(6), dismiss the current case for failure to state a claim upon which relief may be granted.

DATED April 7, 2014

Respectfully Submitted,

XCENTRIC VENTURES, LLC
By Counsel

10

       **_/s/Jason P. Webb__**

Webb IP Law Group
1204 W. South Jordan Parkway
Suite B2
South Jordan, UT 84095