IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VISION SECURITY, LLC, a Utah Limited Liability Company, ROB HARRIS, an individual<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company,<br><br>　　　　　　　　　　Defendant. | **ORDER DENYING MOTION TO ALTER JUDGMENT**<br><br>Case No. 2:13-CV-00926<br><br>Judge Clark Waddoups |

　　　　Defendant Xcentric Ventures, LLC (Xcentric), moves pursuant to Fed. R. Civ. P. 59(e) for the court to reconsider its order dated September 11, 2014 denying its motion to dismiss for failure to state a claim. (Dkt. No. 31). Xcentric argues that the court applied an improper pleading standard and misapplied the Communications Decency Act, 28 U.S.C. § 1292(b) (CDA), by allowing the case to proceed with discovery. For the reasons stated below, the court denies the motion.

　　　　Xcentric correctly states that motions for reconsideration under Rule 59(e) are granted to correct manifest errors of law or to prevent manifest injustice, and cites to *MacArthur v. San Juan County*, 405 F. Supp. 2d 1302 (D. Utah 2005). Such a motion, as Judge Jenkins quotes in *MacArthur*, should be rarely heard and seldom granted.

> Motions for "reconsideration" will not be granted absent "highly unusual circumstances"—they do not provide litigants with an opportunity for a "second bite at the apple" or allow them, like Emperor Nero, to "fiddle as Rome burns", or license a litigation "game of hopscotch", allowing parties to switch from one legal theory to a new one "like a

> bee in search of honey". Such motions are not vehicles for relitigating old issues. Courts properly decline to consider new arguments or new evidence on reconsideration where those arguments or evidence were available earlier.

404 F. Supp. 2d at 1305–06, quoting Steven Baicker-McKee, William M. Janssen & John B. Corr, *Federal Civil Rules Handbook* 962 (2006 ed.) (footnotes omitted). Notwithstanding the fact that Xcentric brought its motion under Rule 59(e), it is in substance simply a motion for the court to reconsider its prior ruling that was adverse to Xcentric. Xcentric does not present any manifest errors of law nor does it come forward with newly discovered evidence or basis to claim a need to prevent manifest injustice.

To the extent its motion should be considered at all, it must satisfy the now accepted standards for bringing a motion for reconsideration. Typically, such motions are entertained under Rule 54(b) if they relate to an interlocutory order, which this motion does. *See Raytheon Constructors v. ASARCO Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003); Fed. R. Civ. P. 54(b) (permitting a decision that does not "end the action as to any of the claims or parties [to] be revised at any time before the entry of a [final] judgment"). In reviewing a Rule 54(b) request to revise a decision, the court applies the same standard as other motions to reconsider. *See, e.g.*, *Zisumbo v. Ogden Reg'l Med. Ctr.*, No. 1:10-CV-73 TS, 2013 WL 2444210, at *1 (D. Utah June 5, 2013) ("[C]ourts in the Tenth Circuit apply the standard applicable to a Rule 59(e) motion to alter or amend a judgment."). And it is well established that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But the Tenth Circuit has also affirmed that "revisiting" issues in a motion for reconsideration that have already been addressed in the initial briefing "is not the purpose of a motion to reconsider"; more importantly, "advancing new arguments or supporting facts which were otherwise available for presentation when the

original . . . motion was briefed" is "inappropriate." *Van Skiver v. United States*, 952 F.2d 1241, 1242–44 (10th Cir. 1991) (internal quotation marks and citations omitted).

In *Van Skiver*, the Tenth Circuit did not address the merits of the motion to reconsider because the moving party had failed to demonstrate any basis for relief under Rule 60(b) of the Federal Rules of Civil Procedure. *Id.* "Relief under Rule 60(b) is discretionary and is warranted only in exceptional circumstances" such as those listed in Rule 60(b). *Id.* (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012. "Motions to reconsider are not to be used as a second chance when a party has failed to present its strongest case in the first instance." *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 906 F. Supp. 2d 1108, 1111 (D. Colo. 2012), *overruled on other grounds by Sec. Serv. FCU v. First Am. Mortg. Funding, LLC*, 771 F.3d 1242 (10th Cir. 2014).

Xcentric fails to meet any of the requirements to warrant a reconsideration of the court's ruling denying its motion to dismiss. The ruling was based upon the complaint. There are no new facts for the court to consider. There is no intervening change in the law. All of the cases Xcentric relies upon were argued and considered by the court in its prior ruling. Finally, the court did not apply the wrong standard for ruling on a motion to dismiss. The court is and was well aware of the pleading standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Nothing the Xcentric's motion supports a conclusion otherwise.

Moreover, Xcentric's motion fails on the merits. The controlling authority for the interpretation of the CDA in the Tenth Circuit is *FTC v. Accusearch Inc*., 570 F.3d 1187 (10th

Cir. 2009). Notwithstanding Xcentric's claim that the Tenth Circuit was haphazard in its language, the Court stated: "We therefore conclude that a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content." 570 F.3d at 1199. The Court then reaffirmed its interpretation of the CDA by distinguishing *Ben Ezra Weinstein & Co. v. America Online Inc.*, 206 F.3d 980 (10th Cir. 2000), that "America Online had done nothing to encourage what made the content offensive—its alleged inaccuracy." 570 F.3d at 1199. Under the CDA, a service provider is immune, among other requirements that are not at issue here, if it was "responsible, in whole or in part, for the . . . development of the offending content." 570 F.3d at 1198 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)). To be held responsible under this requirement, the service provider "must be more than a neutral conduit for that content. That is, one is not 'responsible' for the development of the offensive content if one's conduct was neutral with respect to the offensiveness of the content (as would be the case with a typical Internet bulletin board)." 570 F.3d at 1199. Under this analysis, a service provider is not neutral if it "specifically encourages development of what is offensive about the content." *Id.*

  Xcentric argues that drawing all inferences in favor of Vision Security, it must be found to have been a neutral publisher. The facts as alleged, however, support a contrary conclusion. Applying the *Iqbal* standard, the court must give weight to the following allegations: Xcentric maintains the "Ripoff Report" website with a tag line, "By Consumers, for consumers" and "Don't let them get away with it. Let the truth be known." Contrary to the stated tag line, the Ripoff Report allows competitors, not just consumers, to post comments. (Complaint ¶¶ 21 and 27, Dkt.No. 2). The Ripoff Report home page states: "Complaints Reviews Scams Lawsuits Frauds Reported, File

4

your review. Consumers educating consumers." (Complaint ¶ 22, Dkt.No. 2). These allegations allow a reasonable inference that the Ripoff Report encourages negative content.

Vision Security alleges further that the Ripoff Report published offensive content, which the author later told the Ripoff Report was false and requested that it be removed. (Complaint ¶¶ 28–30, Dkt.No. 2). Xcentric's webmaster told Vision Security that positive posts about a company are not allowed and that under no circumstances will the Ripoff Report remove postings. (Complaint ¶¶ 19–20, Dkt.No. 2). But Xcentric offers, for a large fee, its corporate advocacy program to companies with negative postings on "How to make your search engine listings positive . . . make your reports look like they should: positive." (Complaint ¶ 34, Dkt.No. 2). Thus, Vision Security could find a satisfactory solution to the offensive content—false and defamatory statements published on the Ripoff Report—by paying a large fee to join the corporate advocacy program. (Complaint ¶¶ 33–40, Dkt.No. 2).

These specifically pleaded facts support a reasonable inference that Xcentric was not a neutral publisher. It had an interest in, and encouraged, negative content. It refused to remove the content, even when told by the author that it was false and he wanted it removed. What interest would a neutral publisher have in maintaining false and harmful content against the wishes of the author unless it advanced its own commercial interests? The alleged facts allow a reasonable inference that Xcentric refused to remove the offensive content to promote its own corporate advocacy program. Indeed, it is reasonable to infer that the very *raison d'etre* for the website was to commercialize on its ability to sell its program to counter the offensive content the Ripoff Report encouraged. *See Accusearch*, 570 F.3d at 1200.

The facts alleged by Vision Security are more than enough to state a claim and to preclude any claim of immunity by Xcentric under the CDA. At least at this stage of the proceeding, Vision

5

Security has alleged sufficient facts to be allowed to proceed with discovery. Xcentric's motion for reconsideration is not well taken and is DENIED. For the reasons stated above, there is no basis to certify this issue for appeal without further development of the facts. The motion for certification is also DENIED.

SO ORDERED this 27th day of August, 2015.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge