R. BRETT EVANSON (USB #12086)
BRADLEY J. WEBER (USB #12273)
**EVANSON WEBER, PLLC**
2975 W. Executive Parkway, Suite 201
Lehi, UT 84043
Telephone: (801) 753-8084
Facsimile: (801) 407-1639
brett@evansonweber.com
brad@evansonweber.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| VISION SECURITY, LLC, a Limited Liability Company; ROB HARRIS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company; <br><br> Defendant. | **FIRST AMENDED COMPLAINT** <br><br> Case No. 2:13-CV-00926-JNP <br><br> Judge: Jill N. Parrish |

Plaintiffs Vision Security, LLC ("Vision") and Rob Harris ("Harris"), by and through

counsel of record of the law firm Evanson Weber, PLLC, and in accordance with the Court's

Order herby submit this First Amended Complaint and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Vision is a Utah Limited Liability Company organized and existing under the

    laws of the State of Utah.

2. Plaintiff Harris is an individual that lives and resides in the State of Utah.

3. Xcentric Ventures, LLC ("XV") is an Arizona Limited Liability Company located in Phoenix, Arizona.

4. Jurisdiction is proper before this Court pursuant to 28 USC §§ 1331, 1332 and 1367. This case involves a federal question, specifically violation of the Lanham Act, making jurisdiction proper before this Court. The Court has supplemental jurisdiction over the remaining claims. There is also complete diversity between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00, making diversity jurisdiction also proper.

5. Venue is proper before this Court pursuant to 28 USC 1391(b)(2).

## GENERAL ALLEGATIONS

6. Vision is a direct sales and fulfillment company that focused on door-to-door sales of Residential Alarm Services and related services.

7. Vision's business was seasonal in nature, with most of its door-to-door sales efforts occurring in the months of April through August (the "sales season").

8. During the other months of the year (the "off-season"), Vision focused on recruiting additional salespeople and maintaining its current salespeople who would work for Vision the following sales season. During the fall and spring months, Vision also continued to make sales. For Vision to succeed and be profitable, it was necessary, year to year, for Vision to retain its sales-force, the integrity of its sales program, the leads for potential sales it generates, and to maintain the clientele it had converted from sales.

9. Vision's greatest assets were the goodwill that it develops with its customers, its database of customer information, its database of potential leads and lead generation areas for sales, the integrity of its sales program, and the sales materials related to its operations.

10. The direct sales industry is very competitive with companies offering very large bonuses and other perks to new and continuing salespeople. Particularly, other direct sales companies recruit and attempt to poach those individuals from another company with extensive contacts within that company (to effectuate a migration of sales people to the new company) and with access to customer accounts, potential leads, and sales data.

11. Vision's success depended on maintaining its clientele, protecting its customers' contact information and sales information, potential sales leads and data, and protecting the integrity of its sales program.

12. When Vision recruited a new salesperson, Vision invested a significant amount of time and money in training that person in direct marketing techniques and in the proper use and presentation of products and services sold by Vision and its affiliates. Vision made this investment with the hope that the new salespeople will spend multiple sales seasons with Vision. Salespeople generally become more and more successful and profitable for Vision the longer they stayed with Vision. And, as a person stayed with Vision for multiple years, the person became a leader for Vision and participated substantially in recruiting, sales-force retention, training and development.

13. Harris' reputation in the direct sales industry was extremely important to Vision's success. If Harris' reputation was tarnished in any way, it would have a substantial

negative impact on his ability to recruit salespersons to Vision and to keep key employees of Vision.

14. It is routine in the industry for other companies in the summer sales arena to engage in puffery about their company, their products, and their sales program.

15. At times, individuals working for competing companies would intentionally and knowingly post false and misleading statements about others on forums on the internet in order to persuade sales recruits not to join with Vision or sell with Vision. The postings were also often made to disparage Vision and therefore persuade Vision customers to cease their services with Vision.

*The Website*

16. Defendant XV is an internet content provider and runs a website with a URL of [http://www.ripoffrport.com](http://www.ripoffrport.com) ("Ripoff Report").

17. XV is not merely a website operator because even after the user posts statements of Ripoff Report and the user indicates the user wants their posting taken down, Ripoff Report makes the decision to leave the posting on Ripoff Report and/or to take down the posting – without regard to the personal directive of the user. In doing so, XV takes ownership of the content of the posting and the content therein, thereby making the misinformation and defamatory statements at issue XV's own misinformation, and defamation as set forth herein.

18. XV, in deciding to keep knowingly false statements made by users whose identities are known to XV, when users have requested the postings be removed, XV has for all intents

and purposes become the publisher of those postings, and the statements contained therein.

19. The Webmaster of XV specifically stated to Vision that positive posts about a company are not allowed.

20. The owner of Ripoff Report has indicated that under no circumstances will Ripoff Report remove postings.

21. Ripoff Report's home page has a tag line that says "By consumers, for consumers" and "Don't let them get away with it. Let the truth be known." The tag line is deceptive and misleading, because consumers are not the sole content providers on Ripoff Report.

22. Ripoff Report's home page has a tag line that states "Complaints Reviews Scams Lawsuits Frauds Reported. File your review. Consumers educating consumers." The tag line is deceptive and misleading.

23. Ripoff Report has a tab on its homepage entitled "Consumer Resources."

24. Ripoff Report provide editorial content on Ripoff Report and in the Consumer Resource section.

25. The Consumer Resource Page on Ripoff Report has multiple pages of detailed content relating to:

    a.  Protecting Your Identiy;

    b.  Telemarketing Fraud: Watch out for…;

    c.  Advance Fee Loans, Credit Service & Credit Card Offers;

    d.  Government Grants;

    e.  Work at Home Scams;

     f.   African Money Offers;

     g.   Medicare Rx Coverage Scams;

     h.   Telephone Cramming.

26. Ripoff Report has a page on its webpage from the Ripoff Report Founder Ed Magesdon.

In a post, dated Sat. May 18, 2013, Magedson indicates:

Florida Court of Appeals called Ripoff Report's practice of permitting a defamatory statement to remain on its website "appalling," did it consider that all of the courts permit false and defamatory statements and frivolous allegations to remain on their public records, including their websites? ..The courts (sic) model is virtually identical to that of Ripoff Report Miami, Florida.

*False and Defamatory Posts About Vision Made on Ripoff Report*

27. Anthony Rees ("Rees"), working for a competitor of Vision, posted on Ripoff Report false and misleading statements about Vision.

28. Rees has indicated to XV that Rees desires the posting from Vision to be taken down.

29. Rees has indicated to XV by way of Affidavit the following: (see attached Affidavit of Anthony Rees as Exhibit A)

     a.   Individuals in the summer sales industry often boast and puff about themselves and their company, and knowingly and intentionally make statements about other individuals and companies in order to enhance the odds at recruiging and soliciting top salespeople;

     b.   Rees has posted articles and information on the Internet in order to mislead customers from purchasing a competitor's product in order to improve Rees' situation in the marketplace;

c. Rees has made comments and postings on the Internet about Rob Harris ("Harris") and about Vision Security, LLC ("Vision") that are not true and that he has made the postings on Ripoff Report.

d. Rees has made statements on Ripoff Report about Harris and about Vision that are not true. He made the postings in order to misinform other salespeople and consumers about Harris and Vision.

e. Rees made postings about Harris, Vision Security, Vision Satellite, Daniel Rodriguez and others on Ripoff Report that are untrue.

f. Rees has posted on Ripoff Report that Harris is a liar and a thief. Rees has informed XV that his statement is untrue.

g. Rees has informed XV that in postings on Ripoff Report, he has falsely stated that Vision lies to its employees and does not pay them in a timely manner. Rees has informed XV that in making this posting, he did so without knowledge of the inner workings of Vision and was based entirely on speculation.

h. Rees has informed XV that in postings on Ripoff Report, he has falsely stated that Vision cannot hardwire systems and just loops the system. Rees has admitted to XV he made this posting without knowledge of the inner workings of Vision and his comments are entirely based on speculation.

i. Rees has informed XV that in postings on Ripoff Report, he has falsely made statements on Ripoff Report about Daniel Rodrigues that are untrue and Rees did so in order to mislead consumers and sales people about Harris and Vision.

j.  Rees has informed XV that in postings on Ripoff Report, he has intentionally lied about Vision's poor business ethics.  Rees informed XV that he made these statements with the intent to mislead and misinform consumers and salespersons about Vision's ethics.

k.  Rees made the following posting on Ripoff Report, with a URL – [http://www.ripoffreport.com/r/Vision-Security/Orem-Utah-84507/Vision-Secuirty-Vision-Satellite-Rob-Harris-Daniel-Rodriguez-A-COMPANY-AND-PEOPLE-THAT-F-578183](http://www.ripoffreport.com/r/Vision-Security/Orem-Utah-84507/Vision-Secuirty-Vision-Satellite-Rob-Harris-Daniel-Rodriguez-A-COMPANY-AND-PEOPLE-THAT-F-578183).  Rees informed Ripoff Report that the posting at the aforementioned URL is completely false and Rees made the posting in order to persuade customers and other sales persons not to work for and/or buy products and services from Harris and Vision.  Rees indicated that all of the statements made in the aforementioned postings on Ripoff Report are false and untrue and he desires the postings to be removed from Ripoff Report immediately.

l.  Rees has informed XV that he desires the aforementioned posting and all comments in them to be removed from Ripoff Report because the statements in the postings are misleading in nature and untrue, which was their intended effect and the statements made in the posting have no basis in fact or truth.

30. The aforementioned postings are called the "Rees Postings."

31. Prior to setting forth the aforementioned notice by Affidavit to XV, Rees provided notice to XV that the statements made by Rees about Vision, Vision Satellite, Daniel Rodriguez, and Rob Harris are untrue and that he desires the postings to be removed from Ripoff Report.

32. XV refuses to take down the posts made by Rees that relate to Harris, Vision, Vision Satellite, Daniel Rodriguez, and Rob Harris.

*The Program*

33.  Ripoff Report offers a corporate advocacy program ("Program") at a substantial cost to those companies with negative postings on Ripoff Report.

34. The Program indicates: HOW TO MAKE YOUR SEARCH ENGINE LISTINGS POSITIVE…MAKE YOUR REPORTS LOOK LIKE THEY SHOULD │POSITIVE.

35. XV operates Ripoff Report and openly provides a forum for anyone to write anything about anyone – regardless of the truth or veracity of the statement.

36. The Rees postings are all false and misleading and XV has been made aware of this fact yet will not remove the Rees postings.

37. XV, in failing to remove the postings, is now the publisher of the content set forth in the Rees Postings.

38. XV, rather than take down the postings, has offered that Vision join the Program which requires a large fee.

39. By joining the Program XV contends this is a satisfactory solution because it allows Vision a forum on Ripoff Report whereby they can post positive information and reviews to in essence compete with the false and defamatory statements XV refuses to remove.

40. Requiring a fee from Vision in order to refute the claim made by Rees, rather than simply removing the false, misleading, and defamatory post, is inappropriate.

*Irreparable Harm*

41. The result of XV's choice to disregard Rees' request to take down the postings is harming and will continue to harm Vision and Harris irreparably in the following ways:

    a. Potential loss of workers who read the Rees postings. This would be particularly harmful for those who have already been trained;

    b. Loss of quality recruits who read the Rees Postings;

    c. Loss of current Vision customers;

    d. Loss of future Vision customers;

    e. Continued dissemination of the Rees postings will result in a high likelihood of the customers contacting the Better Business Bureau and/or other watchdog groups, including State and Federal regulatory authorities, complaining of illegal and illicit conduct, which will diminish Vision's goodwill with its customers, the security and alarm market in general, and the goodwill Vision has worked to create with the regulatory authorities and its customers;

    f. Potential loss of relationships with Vision's affiliate companies that fulfill the security services that Vision sells;

    g. Loss of production that would occur if a sales person is successfully motivated to leave Vision due to the content set forth in the Rees postings. The loss would be even greater if the representative was a manger or other leader because of the potential new recruits the manager would have hired and the sales they would have generated;

    h. Vision's owners and workers have been forced and will continue to be forced to invest a significant amount of time to retain leaders and representatives, which

carries a very large opportunity cost, as that time will not be able to be used in hiring and training new representatives that will sell for Vision in the future;

     i.   Vision's owners and workers have been forced and will continue to be forced to take extreme measures to explain its actions, its ethics, Rob Harris, and others; and

     j.   Inability to effectively recruit other salespersons.

### FIRST CAUSE OF ACTION
**(Violation of the Lanham Act, 15 USC § 1225(a)(1))**

42. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

43. Defendant has made false and deceptive representations to the public about Plaintiffs by keeping the Rees postings on Ripoff Report.

44. Defendant knowingly published each of the false statements in the Rees postings by not taking the Rees postings down when Rees provided Defendant with information that the posts are deceptive, false, and defamatory.

45. Defendant's false, misleading, and defamatory statements have created confusion among Plaintiffs' clients, potential clients, employees, potential employees and workers, and others, and will continue to do so if permitted to continue.

46. Plaintiffs have been and will continue to be damaged as a result of Defendant's false statements by the resultant market confusion, by disruption of Plaintiffs' relationships with their customers, by loss of potential customers and qualified workers, by diversion of Vision's customers to Vision's competitors, and by damage to Plaintiffs' goodwill and reputation.

47. Defendant is publishing false, misleading, and defamatory statements about Plaintiffs' services on Ripoff Report.

48. Defendant advertises that its content is made by consumers for consumers.

49. However, Ripoff report has postings from all manner of users who are not consumers, yet Defendant will not remove these postings.

50. Rees is not a consumer, yet he posted on Ripoff Report.

51. Defendant knows that Rees was not a consumer and he was not posting true and correct information for consumers of alarm service products, yet Defendant will not remove the Rees Postings.

52. Defendant's actions are not consistent with the content of its statements on Ripoff Report.

53. Plaintiffs are entitled to an injunction pursuant to 15 USC § 1116(a) barring Defendantfrom further violations of 15 USC § 1125(a).

54. Plaintiffs are entitled to an award of trebled compensatory damages as well as Defendant's profits, and attorney fees and the costs of this action pursuant to 15 USC § 1117(a) in excess of $75,000.00 excluding interest and costs.

## SECOND CAUSE OF ACTION
### (Violation of Utah UCA § 13-11a-3 Deceptive Trade Practices Act)

55. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

56. Defendant has engaged in trade practices that have had as its objective the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of services on Ripoff Report.

57. Ripoff Report's home page has a tag line that says "By consumers, for consumer" and "Don't let them get away with it. Let the truth be known." The tag line is deceptive and misleading.

58. Ripoff Report's home page has a tag line that states "Complaints Reviews Scams Lawsuits Frauds Reported. File your review. Consumers educating consumers." The tag line is deceptive and misleading.

59. XV knowingly allows posts on Ripoff Report, such as the Rees Postings, that it knows are not by consumers and that it knows are misleading and untruthful.

60. XV knowingly allows posts on Ripoff Report that are in consistent with the tag line on its home page – "Don't let them get away with it. Let the truth be known."

61. Ripoff Report will not allow any positive postings on its website.

62. Defendant has disparaged the quality of the names, reputations, business ethics, and professional services of Harris and Vision by knowingly and intentionally publicizing unfounded and unsubstantiated opinions and beliefs after Rees informed XV that the Rees postings are inaccurate and misleading.

63. Defendant created a heightened public expectation based on false and/or misleading representations of fact.

64. Plaintiffs have been damaged in an amount to be proven at trial including enhanced statutory penalties and punitive damages in excess of $75,000.00.

### THIRD CAUSE OF ACTION
**(Defamation)**

65. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

66. Defendant has internal records relating to the identity of those individuals that make postings on Ripoff Report.

67. Defendant knows that Rees posted the content in the Rees postings and that the content therein is false.

68. Defendant advertises it will not disclose the names of the individual users that make postings on Ripoff Report.

69. Plaintiffs are unaware of all of the postings at this time that XV knows are false and misleading made by Rees and others about Vision and Rees.

70. The Rees postings were published by Rees.

71. XV will not take down the Rees postings despite knowing the content is false and misleading and despite the fact Rees wants them taken down.

72. XV, in not taking down the postings despite Rees' request to do so, is stepping into the position of publisher of the content of the Rees Postings and should therefore be declared the publisher of the content in the Rees Postings.

73. The remarks and public implications of the Defendant in the Rees Postings has served to defame the goodwill, name, practice, and quality of service of the Plaintiffs, as well as the goodwill, name, practice, and quality of Plaintiffs' summer sales program.

74. Defendant's actions, by imputing a general want of professional skill, knowledge, and ethics, by Plaintiffs, are actionable per se.

75. Plaintiffs have lost experienced salespeople and recruits to competitors because the competitors direct the salespeople and recruits to the postings on Ripoff Report in an attempt to convince the recruits that Plaintiffs are liars and thieves – among other things.

76. Plaintiffs have lost consumers due to the postings on Ripoff Report because the consumer is deceived by the lies and deceit in the Rees postings about Harris and about Vision.

77. Plaintiffs have been damaged specifically in lost revenue in an amount not less than $200,000 as a result of the false and deceptive statements about Plaintiffs.

78. Plaintiffs have been damaged specifically in lost goodwill in an amount not calculable at this time.

79. Plaintiffs have been damaged in an amount to be proven at trial, including enhanced statutory penalties and punitive damages in excess of $75,000.00.

## FOURTH CAUSE OF ACTION
### (Libel)

80. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

81. Rees posted false and misleading postings about Harris and Vision on Ripoff Report.

82. Defendant, in failing to take down the Rees postings as set forth herein, is the publisher of the content for all intents and purposes.

83. The written published statements and public implications of the Defendant have served to defame the goodwill, name, practice, and quality of service of Harris and Vision; the goodwill, name, practice, and quality of Vision's summer sales program; and Harris' reputation as being honest, straightforward and reliable.

84. The written statements and public implications of the Defendant were made recklessly and without regard to the truth of the claims.

85. Plaintiffs have been damaged in an amount to prove at trial, but in an amount in excess of $75,000.00.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Relations)

86. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

87. Defendant, in failing to take down the Rees postings as set forth herein, is the publisher of the content for all intents and purposes.

88. Defendant's choice to publish the false and misleading information, as complained of herein, is for an improper purpose and Defendant has used improper means.

89. Defendant seeks to extort money from Plaintiffs in order for Plaintiffs to rectify the harm being caused by the Rees Postings and to restore their good names.

90. Vision seeks to provide alarm services and equipment to potential consumers all across the country.

91. Rob Harris seeks to employ the best salespeople in order to sell alarm services and equipment.

92. Plaintiffs rely/relied on their reputations of good equipment, honesty, ethics, integrity of Vision's sales people in establishing new salespersons for its summer sales season, in establishing new customers, and in developing and cultivating relationships with Plaintiffs' contacts and affiliate companies.

93. Plaintiffs have a prospective economic relationship with salespersons intending to make a living selling door to door as independent contractors and with consumers seeking residential alarm service contracts.

94. Defendant has knowledge and, at all times alleged herein, had knowledge of Plaintiffs' prospective economic relations in the area of alarm service contracts.

95. Through the conduct alleged herein, Defendant has intentionally interfered with Plaintiffs' prospective economic relations and Plaintiffs' relationship with Plaintiffs' consumers, salespeople, and affiliates.

96. Defendant's actions have caused Vision to lose valuable sales contacts, experienced salespersons, and to lose goodwill of affiliates, potential customers, potential sales recruits, existing customers, and other business expectancies.

97. Defendant's actions have caused Harris to lose substantial credibility with potential recruits and other business affiliates which is sorely affecting his ability to recruit qualified salespeople.

98. Defendant's actions have disrupted Plaintiffs' relationships with Plaintiffs' staff, customers, sales people and affiliates.

99. Without the interference by Defendant, Plaintiffs had a reasonable probability that it would have received the anticipated economic benefits of these relationships and potential relationships.

100. Defendant's actions amount to an unlawful restraint on trade.

101. As a direct and proximate result of Defendant's intentional actions, carried out through improper means and fueled by an improper motive, Plaintiffs have been severely damaged and have suffered and will continue to suffer irreparable harm and other damages, as described above.

102. Plaintiffs are therefore entitled to injunctive relief against Defendant as requested below and a judgment against Defendant for damages in an amount to be determined at trial, but in excess of $75,000.00.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

103.      Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

104.      Plaintiffs are entitled to declaratory relief concerning the respective obligations,

rights, damages, duties and priorities of the parties hereto under the facts, circumstances,

documents, and transactions identified herein.

105.      Plaintiffs are entitled to have this Court determine the definition of whether in the

context of the facts as plead, Defendant is an internet content provider and publisher of

the Rees Postings.

106.      Plaintiffs are entitled to have this Court determine whether Defendant's conduct is

in violation of the Lanham Act.

107.      Plaintiffs are entitled to have this Court determine whether Defendant's acts are

unfair and improper.

108.      Plaintiffs are entitled to have this Court determine whether Defendant's conduct

has or will cause damage to Plaintiffs.

109.      Plaintiffs are entitled to have this Court determine the appropriateness of

injunctive relief to restrain ongoing and future violations of the law.

## SEVENTH CAUSE OF ACTION
### (Injunctive Relief)

110.      Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

111.      Plaintiffs are threatened with immediate and irreparable harm as a result of

Defendant's disruptive and slanderous comments set forth in the Rees postings.

112.     If Defendant is allowed to continue their campaign unchecked, Plaintiffs will be irreparably harmed.

113.     Plaintiffs have developed substantial goodwill with its customers, affiliates and salespeople.

114.     If Defendant is not stopped, Plaintiffs are justifiably concerned that Plaintiffs may lose valuable staff members and Vision's referring contacts for customers and salespeople; Vision's existing customers may transfer to a competitor; affiliates may no longer do business with Plaintiffs; equipment providers may no longer give Vision equipment contracts; and Plaintiffs may, and did, lose their entire sales program.

115.     The result of XV's choice to disregard Rees' request to take down the postings are harming, and will continue to harm, Vision irreparably in the following ways:

   a.   Potential loss of workers who read the Rees Postings. This would be particularly harmful for those who have already been trained;

   b.   Loss of quality recruits who read the Rees Postings;

   c.   Loss of current Vision customers;

   d.   Continued dissemination of the Rees Postings will result in a higher likelihood of the customers contacting the Better Business Bureau and/or other watchdog groups, including State and Federal regulatory authorities, complaining of illegal and illicit conduct, which will diminish Vision's goodwill with its customers, the security and alarm market in general, and the goodwill Vision has worked to create with the regulatory authorities and its customers;

e.  Potential loss of relationships with Vision's affiliate companies that fulfill the security services that Vision sells;

f.  Loss of production that would occur if a salesperson is successfully motivated to leave Vision due to the content set forth in the Rees postings. The loss would be even greater if the representative was a manager or other leader because of the potential new recruits the manager would have hired and the sales they would have generated;

g.  Vision's owners and workers have been forced and will continue to be forced to invest a significant amount of time to retain leaders and representatives, which carries a very large opportunity cost, as that time will not be able to be used in hiring and training new representatives that would have sold for Vision in the future;

h.  Vision's owners and workers have been forced and will continue to be forced to take extreme measures to explain its actions, its ethics, Rob Harris, and others.

## **DEMAND FOR RELIEF**

Plaintiffs request judgment against Defendant as follows:

1.  That the Court adjudge and decree as follows:

a.  That Defendant violated the Lanham Act and Plaintiffs are therefore entitled to an Order against Defendant pursuant to 15 USC § 116(a) granting a preliminary and permanent injunction restraining and enjoining Defendant and their agents, servants, employees, officers, attorneys, successors and assigns from:

     i. Causing any false or misleading statement or a statement likely to or intended to confuse a potential consumer, affiliate or salesperson about the ethics, honesty, integrity and quality of Rob Harris and Vision;

    ii. Making any false or misleading statement or a statement likely to or intended to confuse a potential consumer, affiliate or salesperson regarding the function, performance, capabilities, specifications, features, requirements, reliability, availability, origin, sponsorship, or approval, or lack thereof, relating to Rob Harris' sales organization and Vision;

   iii. Making false or misleading statements or a statement that is likely or intended to confuse Vision's consumers or potential consumer into believing that Vision is not qualified to perform its services and/or does not have the proper certification;

   iv. An accounting of Defendant's profits resulting from their deceptive practices and payment of such profits to Plaintiffs; and

    v. Compensatory damages, and treble that amount;

  b. That Defendant, all persons acting on its behalf or under its direction or control, and all successors thereto, be preliminarily and permanently enjoined from maintaining the Rees postings on any website owned and/or controlled by Defendant.

2. That the Court enters such other preliminary and permanent relief as is necessary and appropriate to restore competitive conditions in the markets affected by Defendant's unlawful conduct.

3. An award for all such damages arising from the defamation of Plaintiffs and their businesses, reputations, and the misconceptions that have been fostered as an objective of the defamation set forth herein.

4. An award for all such damages arising from the libel of Plaintiffs and their businesses, reputations, and the misconceptions that have been fostered as an objective of this libelous printing and publishing of falsehoods and misconceptions as manifest in Utah Code Ann. § 45-2-2.

5. Damages for tortious interference with contractual and prospective economic relations.

6. Treble and punitive damages to the fullest extent allowed by law.

7. Court costs and expenses of litigation as allowed by law; and

8. All other relief that the Court deems just, necessary and proper.

Signed and Dated this 22nd day of January 2016.

EVANSON WEBER, PLLC

 /s/ R. Brett Evanson
R. Brett Evanson
Bradley J. Weber
Attorneys for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 22, 2016, I caused to be filed via the Court approved

CM/ECF system the forgoing First Amended Complaint which caused the same to be served

on the following:

Jeffrey J. Hunt
Rachel L. Wertheimer
Parr Grown Gee & Loveless

Adam S. Kunz
Aaron K. Harr
Maria Crimi Speth
Jaburg & Wilk

*/s/  R. Brett Evanson*
R. Brett Evanson
